## NECHES CANAL CO. et al. v. DISHMAN et al. (No. 1677.)

Court of Civil Appeals of Texas. Beaumont. April 4, 1928.

Rehearing Denied October 3, 1928.

George Chilton and Jas. A. Harrison, both of Beaumont, for appellants.

M. L. Lefler, of Beaumont, for appellees.

WALKER, J. The Neches Canal Company, one of the appellants, duly incorporated under the laws of Texas as an irrigation company, brought this suit against appellees J. A. Dishman and George Dishman to restrain them from destroying its North Amelia lateral, constructed and being operated across the Dishman land. Appellants R. T. Pinchback and Seawillow Pinchback, husband and wife, own land on the other side of the Dishman land from the main canal of the Neches Canal Company, and claim the right to have this land irrigated by water transported through this lateral across the Dishman land from the main canal of the Neches Canal Company. Asserting that claim, they were made parties defendant, and joined with the Neches Canal Company, asking for the same relief prayed for by that company. By proper orders, the owners of the other land crossed by this lateral were made defendants. Thus all the parties owning land on this lateral were before the court. This conclusion is contested by appellants, but it was made by the trial court, and has support in the evidence. All the defendants, except the Pinchbacks, prayed that the lateral be destroyed. Originally, a temporary injunction was granted restraining the Dishmans from destroying this lateral, but on trial on the merits this order was dissolved and appellants were denied all relief. On the facts, all the land served by this lateral had increased immensely in value since its construction, and was becoming residential property, worth, as such, on an average of about $500 per acre, while as rice land irrigated by this lateral it had a value of only about $40 or $50. Much of it was being cut up into small homestead tracts, and as such was damaged by this lateral to the extent of $100 per acre. The Dishman land, as rice land, was worth $40 or $50 per acre, but as residential property had a value of probably $500 per acre. For many years prior to the institution of this suit only a small portion of the land on this lateral had been cultivated in rice. In the year this suit was filed, they made demand for water, which, as the Neches Canal Company was then operating its plant, could be furnished only through the lateral in question and across the land of appellees. The issue was raised and has support in the evidence that the Pinchback land could be irrigated at a cost of about $800 from another lateral of the Neches Canal Company by using relift machinery. But it was cheaper and more convenient to the Pinchbacks to irrigate their land across appellees' land. In support of its judgment the trial court made and filed the following conclusions of law and fact:

### "Findings of Fact.

"(1) I find that the North Amelia lateral is located and described as set forth in paragraph 9 of the answer of J. A. Dishman and George Dishman and that the defendants are the owners and all the owners of the land that could be watered by the North Amelia lateral or distributing ditch of the Neches Canal System, and that all of said owners, except the defendants R. T. Pinchback and wife, Seawillow Pinchback, desire that said North Amelia lateral be abandoned and that all of said owners, with a possible exception of R. T. Pinchback and wife, Seawillow Pinchback, have abandoned the cultivation of rice on the entire acreage heretofore watered by said North Amelia lateral or distributing ditch; and I further find that R. T. Pinchback and wife, Seawillow Pinchback, have never cultivated more than 75 acres in rice in any one year, and that they have not cultivated but one crop of rice since the year 1920.

"(2) I further find that the North Amelia lateral is a distributing ditch built and constructed at different times during the several different years under written contracts executed at different times in different years with the owners of the land or their tenants authorized to so contract, and that the portion thereof entering and extending through the land of the defendant J. A. Dishman, was constructed under the terms of a written contract between the Neches Canal Company and the owner of the land at the time of its construction in about the year 1906, which provided an easement over said land for said year, and that under said contract, said easement expired at the end of said current year, and that each year thereafter during which rice was grown on said land an easement was granted to the Neches Canal Company under a written contract with the then owner of the land for one year only, granting the right to the said canal company to use said lateral or distributing ditch, to conduct water to the adjoining rice growers.

"(3) I further find that the Neches Canal Company in succeeding years constructed the remainder of said North Amelia lateral or distributing ditch under the terms of written contracts entered into with the various owners of the land through which said lateral extended, in which contracts it was provided that the landowner granted to the canal company an easement over his land for the right of way for said lateral or distributing ditch and extensions as were necessary to reach the land or lands of other owners beyond his land, and that said contracts covered only the current years, and that each succeeding year when rice was grown similar contracts were made, providing for an easement for only the current year, and further provided that all prior understandings and agreements between the parties relating to the subject-matter of the contract, were merged in and evidenced by the written contract of that year.

"(4) I further find that in the year 1921, the defendant J. A. Dishman entered into a written contract with the plaintiff which had the same provisions as the provisions referred to in the paragraph above, and that that was the last contract which the said J. A. Dishman had with the said plaintiff.

"(5) I further find that all of the land, with the exception of that belonging to R. T. Pinchback and wife Seawillow Pinchback, contiguous to the said North Amelia lateral, is being subdivided and sold in small acreage tracts for rural home sites, and that said land is very desirable for said purpose, and for such purpose has a value ranging from $250 to $1,000 per acre, and that the operation of the said North Amelia lateral as an irrigating and distributing ditch is a nuisance and would destroy the usefulness of said section for the purpose of said home sites, for which it is particularly adapted, and that it is for the best interest of said landowners that said lateral be abandoned.

"(6) I further find that the continued use and operation of the said lateral or distributing ditch will injure the said J. A. Dishman in the sum of $10,000, and will greatly injure the defendants M. L. Lefler, G. D. Hodgson, and S. Perry Brown, trustees.

"(7) I further find that the defendants R. T. Pinchback and wife, Seawillow Pinchback, have expended no money in constructing said distributing ditch through the land of J. A. Dishman or the land of M. L. Lefler, G. D. Hodgson, and S. Perry Brown, trustees for the Amelia Land Trust, and that no act or conduct of the said J. A. Dishman or the said M. L. Lefler, G. D. Hodgson, and S. Perry Brown, trustees for the Amelia Land Trust, nor their predecessors in title, has been committed whereby they are estopped to abandon said canal and that the said R. T. Pinchback and wife, Seawillow Pinchback, have no right, title, or easement over the land of J. A. Dishman or over the land of M. L. Lefler, G. D. Hodgson, and S. Perry Brown, trusteees, for the purpose of running water to irrigate their said land.

"(8) I further find that there is another lateral and distributing ditch from the main canal of the Neches Canal Company through which said Neches Canal Company can furnish water for irrigating purposes to the said land of R. T. Pinchback, and wife, Seawillow Pinchback; that said lateral and distributing ditch reaches the land of the said R. T. Pinchback and wife, Seawillow Pinchback, and will be put to the necessity of slightly relifting the water from said lateral and distributing ditch and distributing it over their land.

"(9) That all the parties, plaintiffs and defendants, have agreed that the said lateral or distributing ditch shall be abandoned from the east line of the land belonging to defendants R. T. Pinchback and wife, Seawillow Pinchback, to the eastern termination of said lateral or distributing ditch.

"(10) I further find that the Neches Canal Company agreed to abandon the North Amelia lateral if it were the desire of the landowners and if the same could be done in such a way as to relieve them from liability for failure to furnish water.

"(11) I further find that R. T. Pinchback abandoned and permitted the Neches Canal Company to abandon a similar lateral and distributing ditch which did not pass through the land of the said J. A. Dishman by which he could have watered much more land, practically his entire farm, than from the North Amelia lateral, which will only water approximately 75 acres.

## "Conclusions of Law.

"Based upon the above and foregoing findings of fact, I conclude as a matter of law that the plaintiff Neches Canal Company at this time has no right, title, or easement over said land of the said defendants for the use of said North Amelia lateral for the purpose of furnishing water to R. T. Pinchback and wife, Seawillow Pinchback, I conclude as a matter of law and equity that the defendants R. T. Pinchback and wife, Seawillow Pinchback, have no right, title, or easement over the land of the defendants for the purpose of requiring the Neches Canal Company to furnish them water through said lateral. I conclude as a matter of law and equity that, if the said R. T. Pinchback and wife, Seawillow Pinchback, demand of the Neches Canal Company water for irrigation purposes, they can be required to take the same through the other lateral supplying their land, and be required to do what is necessary to distribute the water upon their own land. I conclude as a matter of law and equity that the injunction

"heretofore granted against J. A. Dishman and George Dishman should be dissolved, and that the use of said North Amelia lateral as an irrigating ditch should be abandoned,"

—all of which are attacked by appellants as being without support. While we think that all the trial court's conclusions, both of fact and law, have support in the record, we do not review the facts thereon, since the court's conclusion that the Neches Canal Company owned no "right, title, or easement over said land of said defendants for the use of said North Amelia lateral for the purpose of furnishing water to R. T. Pinchback and wife, Seawillow Pinchback," has support in the evidence and supports the court's judgment. But appellants vigorously assail this conclusion. Admittedly, they have no deed to a right of way across this land, and never had the same condemned for the use of their lateral, nor did they have title by prescription. On that issue the evidence and contentions were as follows:

■ The lateral was originally constructed by the Neches Canal Company across this land by consent of its then owner, Mrs. Cunningham. The officers of the Neches Canal Company testified that she agreed verbally that they might construct this lateral across her land, which was, in fact, done. They did not testify to a permanent easement, but only to the right in the general terms as stated. Appellees claimed that this canal was originally constructed under a written agreement between the Neches Canal Company and the owner of the land, giving them an easement only for one year, and that this easement was renewed year by year, but never extended beyond a one-year period, and that appellants' use of this lateral had always been under and in recognition of this grant. In support of their contention, a written contract sustaining them was offered in evidence. Their verbal testimony also corroborated and supported their construction of appellants' right. We think this evidence clearly raised in appellees' favor the issue that the Neches Canal Company had no right, title, or easement over the land of appellants at the time the suit was brought, by prescription or otherwise. Having no such right, they could not maintain their lateral against the wishes of the owners of the land. The conclusion that the Pinchbacks expended no money in constructing the lateral in question across the land of appellees and that appellees had committed no act estopping them to deny the right of the Pinchbacks to have water across their lands fully supports the court's conclusion that the Pinchbacks "have no right, title, or easement over the land of defendants for the purpose of requiring the Neches Canal Company to furnish them water through said lateral."

From what we have said, it follows that the judgment of the trial court must be and the same is hereby in all things affirmed.

On Motion for Rehearing.

A careful review by us of the written contract introduced by appellees and referred to in our original opinion convinces us that it has no bearing upon the merits of this case, and all references to it as sustaining the trial court's judgment are withdrawn.

But we overrule appellees' motion for rehearing on the trial court's conclusion "that the North Amelia lateral is a distributing ditch," and the further conclusion by us that the issue was raised under the evidence that this ditch was not constructed originally as a permanent part of the canal system of the Neches Canal Company. On the issue that the "lateral" was a mere "distributing ditch," Mr. J. E. Broussard, shown by the record to be an irrigation expert, testified:

"The North Amelia lateral is nothing more than a large distributing ditch from the main lateral. This is all it is."

As we understand the evidence, a "lateral" is constructed as a permanent part of the canal system, while a distributing ditch is of a temporary nature. On the issue of intent controlling the character of the lateral, Mr. Broussard testified:

"I didn't know that it belonged to the Neches Canal Company, they had not identified it of record, you see. I had no knowledge they were exercising any claim whatever on that lateral. We have a lot of laterals that run through different farms that we don't have any claim on, that belongs to the property owners. If a farmer wants to get water, he agrees to let it go through his land. I am speaking of the Beaumont Irrigating Company now. The only claim that we have to those laterals is the right to run water through as long as the farmers want it and as long as it is necessary, and whenever it is abandoned the land goes back to the property owners. I thought the Neches Canal Company operated along the same lines. When I bought my land I didn't know that the lateral was being used; it didn't appear to have been used the year before; I didn't know that the Neches Canal Company even asserted any kind of claim to it. I think it was 1924 when I bought my property. When I bought my property the lateral showed to have been abandoned and in a bad state of repair. It was in a bad state of repair, and you couldn't hardly call it a lateral at that time. It was not in condition for water to be run through for irrigation purposes, at that time. They have done a little repair on it since then; I think it was last year that they did a little repair work on it, and I protested against its use at that time, and they said they had already promised water to Mr. Reed a way down on the Cartwright property, and I consented at that time that they might go ahead and pump the water, and Mr. Reed spoke to me about it, and I said, 'That is all right; go ahead and use it this year, but I didn't want them to use it any longer,' and I also told him, 'I didn't think that

they had any right to it,' but that they could go ahead and use it that year because it wasn't bothering us then and we wasn't trying to sell it to anybody to live on at that time."

If the Neches Canal Company's grantor consented and agreed that the canal company might build their North Amelia lateral across her property, knowing that it was to be used permanently as a part of the canal system, her license, though verbal, was irrevocable and binding, not only upon her, but her grantees, the appellees here. The authorities denounce as a fraud the revocation of a parol license to permanently occupy and improve realty after any considerable expense has been incurred on the faith of such license; but, if the parties did not intend the improvement to be permanent, the license is at will only. Such a license has been denominated "a mere personal favor to the licensee," and is said to be "revocable at will," and that expenditures under authority of the license "would naturally be made accordingly." This conclusion does not rest upon the definitions of the terms "lateral" and "irrigation ditch" deducible from the record. Whatever may be the technical meaning of these words, the rights of the parties should be determined by the intent of the parties, the original licensor in giving the license, and the licensee in accepting it. Such laterals as described in the record are built in connection with and to facilitate the use of irrigation systems. Without controversy, it was shown that the Neches Canal Company has peremptorily, that is, without sanction of law, or without asking permission, abandoned one of its laterals adjacent to the one in issue. The record shows that for years this lateral in issue was not used, and, when buying his property, which was crossed by this lateral in 1922, Mr. Broussard thought it had been abandoned. All such evidence was admissible on the issue of intent at the time the Neches Canal Company constructed this North Amelia lateral, and by this evidence the issue was raised that the original license was intended as a mere personal favor to the Neches Canal Company, and not as an estate or easement in the land. By the trial court's judgment that issue was found in favor of appellees. On that conclusion the original license was revocable at will, regardless of the expenditures made by appellants, and the issue of limitation was not raised against appellees. The authorities on this proposition are discussed and reviewed by the Supreme Court of Oregon in Shaw v. Proffitt, 57 Or. 192, 109 P. 584, 110 P. 1092, Ann. Cas. 1913A, 63. While the Texas cases are not cited in that case, as we understand the decisions of our courts, the same principles are judicially recognized. Railway Co. v. Sweat, 20 Tex. Civ. App. 543, 50 S. W. 162; Knowles v. Traction Co. (Tex. Civ. App.) 121 S. W.

232; Railway Co. v. Jarrell, 60 Tex. 267; Capps v. Railway Co. (Tex. Civ. App.) 50 S. W. 643.

The motion for rehearing is overruled.