**NECHES CANAL CO. et al. v. DISHMAN et al.**

No. 1085—5312.

Commission of Appeals of Texas, Section B.

Jan. 6, 1932.

George Chilton and James A. Harrison, both of Beaumont, for plaintiffs in error.

Crook, Lefler, Cunningham & Murphy, of Beaumont, for defendants in error.

SHORT, P. J.

While the defendants in error, in their answer filed to the plaintiffs in error's application for the writ of error, do not concede the facts to be as stated in the application for the writ of error, we have concluded that the following statement made in the application

is substantially correct, at least sufficiently so, to discuss the points of law involved.

"This suit was brought in the District Court of Jefferson County, Texas, by the Neches Canal Company for a temporary and permanent injunction restraining the Dishmans from destroying the banks of the North Amelia Lateral, a canal owned and operated by the Neches Canal Company.

"This canal was constructed by the Neches Canal Company at the request of and under verbal grants of right of way in 1905 from and by the owners of the land through which the canal was constructed; which is known as the North Amelia Lateral and leaves the main canal near Amelia in Jefferson County, Texas, and extended a distance of Four or Five miles to reach and go through land suitable for growing rice and was capable of watering and did take care of the rice growers on about 2,000 acres of land.

"This canal was used, maintained and operated every year by the Neches Canal Company and it furnished water to the rice growers adjacent to the canal every year when such prospective rice farmers demanded water and filed their applications for water as provided by statute.

"The Neches Canal Company is incorporated under the laws of Texas for the purpose of constructing, maintaining and operating canals, ditches, flumes, feeders, laterals, dams, reservoirs, lakes, and wells, and of conserving, storing, conducting, and transferring water to all persons entitled to use the same for irrigation, mining, milling, manufacturing, the development of power to cities and towns, for water works, and for stock raising.

"This North Amelia Lateral was claimed, held and used continuously by the Neches Canal Company in furnishing water to those rice farmers who desired it beginning in 1906 and up to the time that this suit was instituted, November 12, 1926, and the defendant Dishman for several years and as long as he saw fit to grow rice on his land was furnished water from this canal under the regular and usual written contracts of the Neches Canal Company.

"When Dishman purchased the land the canal was then on it and had been there for Twelve years, having been finished in 1905, and Dishman purchased the land in 1917.

"The defendant Dishman desiring to use his land for other purposes than growing rice and believing that the canal on his land interfered with its sale value without permission from the canal company and without their knowledge but solely on his own initiative began plowing down the earthen banks of the canal.

"A canal is not a ditch dug in the ground but the surface of the ground forms its bottom and the sides or banks to hold the water are made by throwing up and packing earth sides for embankments.

"When these walls are plowed down as Dishman was doing, the canal is destroyed so far as conveying water is concerned.

"The District Court granted the temporary injunction prayed for by the Neches Canal Company, which injunction was in full force until the trial on the merits.

"On trial before the District Court without a jury the said court held that the Dishmans had a right to destroy this canal and refused and denied the plaintiffs' prayer for permanent injunction and refused and denied plaintiffs' prayer for a mandatory injunction requiring Dishman to restore the canal back to the condition it was in before he plowed down the banks.

"Mrs. Seawillow Pinchback owned approximately 120 acres of land on and adjacent to this canal and the canal furnished her land with water for growing rice during the year 1926 and the Pinchbacks had filed with the Neches Canal Company a due and legal application for water for irrigation of rice for and during the year 1927.

"The defendant Dishman impleaded the Pinchbacks, and numerous others who owned land on and adjacent to said canal and sought to have said canal judicially abandoned by the District Court.

"There was no objection either by the Neches Canal Company or the Pinchbacks to the abandonment of said canal east of the Pinchback land and toward the city of Beaumont, but they did object to the abandonment of said canal between the Pinchback land and the main canal of the Neches Canal Company since such abandonment or destruction of any portion of the canal to the west of the Pinchback land would prevent him securing water on his land.

"The appellants, Neches Canal Company and R. T. Pinchback and wife duly excepted to the judgment of the District Court, gave notice of appeal and in due time and in proper manner carried the case on appeal to the Court of Civil Appeals for the Ninth Supreme Judicial District of Texas at Beaumont.

"The Court of Civil Appeals on March 2, 1928, filed its opinion and in all things affirmed the judgment of the District Court." 9 S.W.(2d) 281.

While there are many other assignments of error and propositions thereunder, we have concluded that the first assignment of error, and the three propositions stated thereunder, are sufficient to present the questions of law which are necessary to be decided. These are:

"First Assignment of Error.

"Which is first ground in motion for rehearing. The Court of Civil Appeals erred

in declining to sustain appellants first proposition on appeal which is as follows: The Court erred in dissolving the injunction herein because the North Amelia Lateral was and is the property of the Neches Canal Company and the defendant Dishman has no right to destroy the same.

### "First Proposition.

"Having constructed this canal under verbal grant and permission of all land owners through whose land the canal passed, the right of the Neches Canal Company to said canal and the easement over said land to operate the canal is irrevocable.

### "Second Proposition.

"All land owners having granted to the Neches Canal Company the right and permission to build said canal on said land and operate same for irrigating purposes in 1904 and said canal having been actually constructed and finished by the Neches Canal Company in 1905 and having been used and maintained regularly each and every year for over twenty years in furnishing water to rice growers adjacent to the canal, the Neches Canal Company had full and perfect right and title to said canal for irrigation purposes by limitation.

### "Third Proposition.

"Mrs. Cunningham, the then owner, having granted to the Neches Canal Company the right of way and permission to construct and maintain said canal over her land, which included the land now owned by defendant Dishman, and defendant Dishman having purchased said land with the knowledge that said canal was on it and being maintained and operated by the Neches Canal Company took the land subject to the canal easement and cannot question the right of the Neches Canal Company in and to said canal."

■ The findings of fact filed by the trial judge, which are set out in the opinion of the Court of Civil Appeals, are too lengthy to copy here, but, in so far as there is any testimony to support any finding of fact, we are under the necessity of adopting such finding, since the Court of Civil Appeals did adopt all of them, and yet, in the view we have taken of this case, we do not consider these findings very material in reaching a correct conclusion of the law applicable thereto.

It seems that in 1905 the owners and their tenants of some 2,000 acres of land decided to plant rice thereon, and approached the plaintiff in error Neches Canal Company with a view of procuring from it such water as they would need in producing crops of rice. The Neches Canal Company, being desirous of making a profit out of the enterprise, agreed to establish a system of waterways from its main canal, so as to furnish this water as it was needed to the owners and tenants of this acreage. The Neches Canal Company did establish this system, at considerable expense, throughout this acreage, with the verbal permission of the owners of the lands, and from time to time thereafter, commencing in 1906, this water was delivered as it was needed to various and sundry parties. This procedure continued for perhaps fifteen years, after which there was a gradual diminution in the acreage planted in rice, and of course a corresponding diminution in the amount of water furnished, as well as the number of persons to whom the water was furnished.

In the year 1926, owing to a change of conditions in that section, most of the owners of the land, who at one time used water in the production of rice, reached the conclusion that the lands were more valuable for residential purposes than for agricultural uses. Among these owners was the defendant in error J. A. Dishman, who had purchased a part of the original 400 acres which belonged to Mrs. M. J. Cunningham, who had given verbal permission to the Neches Canal Company to build a lateral canal through her land, which was in fact built. The plaintiff in error Mrs. Seawillow Pinchback, a daughter of Mrs. Cunningham, and her husband, owned a part of this 400 acres which was furnished with water by the Neches Canal Company, by means of the lateral canal, built so as to connect with the main canal, and extended through the Dishman land and on to the Pinchback land. The defendant in error J. A. Dishman seeks to destroy that part of the canal located on his land, and claims the right to do so. The plaintiffs in error Pinchback desire to grow rice on their land, and, in order to do so, need the water which the Neches Canal Company is under obligation to furnish, and which the Neches Canal Company is willing to furnish, by using its lateral canal constructed through the Dishman land. Hence, this lawsuit.

■■ The trial court, in its findings of fact, among other things, found that the improvements located on his land, which the defendant in error J. A. Dishman claims the right to destroy, is a mere distributing ditch, and not a canal. This finding of fact was approved by the Court of Civil Appeals. That court also concluded that this improvement, which is called a "ditch," was not constructed originally as a part of the canal system of the Neches Canal Company. These are findings of fact, and if there is any substantial testimony to support either finding we would be bound thereby. Construing the second finding as a declaration that the improved property, about which this dispute has arisen, was merely a temporary one, constructed by the permission of the landowners, they must have a further understanding that it was no longer to be continued when the landowners of these several tracts of land might conclude they did not need this improvement any longer. We will discuss these two find-

ings of fact in the light of the record, and in order to do so intelligently it will be necessary to quote a part, and substantially state other parts of the testimony. A distributing ditch may be defined to be one of a temporary nature, constructed so as to receive water from a lateral canal, and distribute it to various parts of a field which is being irrigated. Usually such a ditch extends from the canal only through a particular field to the outermost parts thereof, where rice has been planted and is growing. It is one that makes off from the side of a canal and leads away therefrom. The testimony shows that the Neches Canal Company owns an irrigation system into which water is taken from Pine Island bayou in Jefferson county. This system consists of a main canal and two lateral canals. These lateral canals branch off from the main canal and carry water by gravity a distance of several miles. The lateral canal involved here is shown to be as much as four miles long, and at least forty feet wide, and it is called the North Amelia Lateral. The water in this lateral canal is supplied to the lands of farmers of either side for the purpose of rice culture by gravity. It is constructed on top of the ground with numerous wooden and concrete flumes, gates, controls, and culverts of a permanent character, and is sufficient to furnish water for about 2,000 acres of land.

Originally, the transaction out of which this lawsuit has grown was in the nature of a joint adventure by the landowners and their tenants on the one part, and by the Neches Canal Company upon the other part, wherein the parties of the first part desired to grow rice on their several tracts of land, and the party of the second part desired to furnish the necessary water to enable the parties of the first part to grow this rice, the purpose of the parties of the first part being to make a profit out of the rice grown, and the purpose of the party of the second part being to make a profit out of the water furnished. But the party of the second part had no irrigation system in operation through the lands belonging to the parties of the first part, and in order to successfully accomplish the enterprise it was essential that the party of the second part should establish a system of irrigation. To do this required considerable expense. This system was established. The water was furnished, and on divers and sundry years, not consecutive, however, rice was grown on most, if not all, of the 2,000 acres of land, at different times, during the succeeding period of more than twenty years.

C. W. Rollins was the engineer of the Neches Canal Company, and had been acting in that capacity twenty-five years when he testified. After stating that the canal was put in there with the consent of everybody interested in having water furnished about the year 1905, and that the canal company had claimed the right to use and operate the canal as a part of the system of the company since that time, he said: "I will explain what is meant by 'distribution ditch' or 'supply ditch.' That is a term used in rice farming. We have a system leading away from the main canal called 'laterals' and these laterals are put on the divide of the high land as near as we can, in order that we may water each side of the lateral, and these supply ditches or distribution ditches carry it on away to the different places. These little supply ditches or distribution ditches lead off from the laterals, and are used in distributing water on beyond the main canal or lateral. I would not consider a supply ditch a 'lateral. The North Amelia Lateral is a 'lateral, and not a distribution, or supply ditch. That North Amelia Lateral is sufficient to water two thousand acres of land. * * * It is the lateral that goes to Mr. Pinchback's land. This lateral goes through Mr. Pinchback's land, it does not go along the edge of it."

W. M. Carroll, who, after testifying that he was president and general manager of the Neches Canal Company and had been with that company since 1903, among other things, said: "The North Amelia Lateral makes out from the main canal and runs through by Amelia. The lateral leads off from the main canal up there in the Houston League; I guess that lateral is about three miles or more, up above there. We have two laterals out there, one the North Lateral, which is the North Amelia Lateral, and the South lateral, which is the Port Arthur canal, or lateral. This lateral that goes through by Amelia is called the North Amelia Lateral from the time it leaves the main canal until it runs out. Where it branches off we call it the North and South Amelia Lateral. To the best of my recollection this North Amelia Lateral was constructed some time in the winter of 1905. I remember the circumstances under which the canal was put in there. After we had constructed our system, the farmers in that section of the country decided that they wanted to plant some rice, and we had not extended our system down there, so as to take care of them, so the different farmers around there, and tenants, kept talking to me about it, and in some instances the farmers would want to farm it in rice, and they asked me to see the land owners about getting the water down there to them, so at that time Mrs. Cunningham was the one I saw in person, and I talked to her about it; the land owners, at that time, were glad and anxious to get the water in there and they gave the right of way for the canal. * * * The canal company has since 1905 and 1906 used the North Amelia Lateral, and they have claimed the right to use and operate that canal as a part of the system of the Neches Canal Company. There never has been any question raised about that lateral

by any of the owners. Each year since the construction of that lateral, the canal company would use it during the season to pump water to land adjoining it and on to lands in the adjoining country, to persons who had contract for the water. The canal company kept it in condition, and used it for the purpose of conveying water to the persons desiring it, and who had contracts. * * * The work done on that lateral compared just the same with the other work done on the other parts of the canal system. We could not abandon that canal or lateral without the consent of the land owners; we couldn't abandon it without we had the assurance that everybody that had a right to take water from us would give up that right. * * * I will explain to you what is meant by 'distribution ditches' referred to in our printed contracts: Distribution ditches are small ditches that run out from our main lateral to supply lands that are not situated on the laterals. Distribution ditches are not the laterals themselves * * * I don't think there was a year but what we watered some land on the laterals, I don't think there has been a year but what somebody took water out of the lateral. All during that time, the lateral was maintained and kept up by us for the purpose of supplying water."

The defendant in error Dishman, among other things, testified: "This particular 100 acres that this canal crosses I had a part of this farm since 1913, and we irrigated it too before I bought the 100 acres. This 100 acres I think I bought it in 1917. I have irrigated and raised rice on that 100 acres. I irrigated it from the canal—or the North Amelia Lateral. I took water to raise my rice crop from the Neches Canal Company. * * * When I bought that land in 1917 I saw that lateral canal there. * * * I bought that land originally to farm rice on; immediately after I bought the land I commenced to farm on it, and got my water from that lateral. * * * I planted my land in rice four years. I have not planted my land in rice since that time. Since I quit planting and raising rice I have been planting corn and cotton on my land. I did not have to have any distributing ditches to distribute the water over my field; when they turned the water in, it run right through my property. My land slopes mostly to the east, I am the man that first started plowing down those levees. * * * I knew that by plowing the lateral down that I would prevent Mr. Pinchback or any one else from using it at all. When I plowed the lateral down I knew that that would prevent anybody from using it any more until it was fixed up again. When I plowed down that lateral I knew that everybody east of me on the lateral would be prevented from using it, and would be deprived of its use. When I plowed the lateral down I knew that the thing was dead, I knew that it was destroyed. * * * The

canal was there when I bought it just as it is now. I knew whose canal it was when I bought the land. I knew that the canal and lateral belonged to the Neches Canal Company when I bought it." There is other testimony in the record to the same effect as to the nature of this improvement, indicating that it was not merely a distributing ditch, but that it was a canal. That is, a lateral canal making off from the main canal.

One witness who seems to have been a competitor of the Neches Canal Company, by the name of Broussard, did make this statement in his testimony: "There is not any difference in a lateral and a distributing ditch." After making this statement, this witness further testified: "I know the difference between a lateral and a ditch; a ditch and a lateral are two different things, one is for drainage, and the other is for irrigation. They don't have irrigation ditches, they have irrigating laterals, because a ditch is supposed to be something that drains off—that is my definition. When you cut in the ground and make a ditch, then the water runs through the body of the ground, that is a ditch; a lateral is something that you build on top of the ground by putting up two sides; the water is carried above the surface of the ground in a lateral. My definition of a ditch is something that is dug below the surface of the ground and the water passes through that. A lateral or a canal is something that goes over the top of the ground; however, sometimes they do in the ground also. That thing out there that belongs to the Neches Canal Company, if it was forty feet wide and extends for a distance of four or five miles, and is sufficient to irrigate two thousand acres of land, I would call that a lateral, and not a ditch. This is not a ditch, but a lateral."

This is substantially all of the testimony on this subject, and outside of one expression by the witness Broussard, which he afterwards says, in effect, he did not mean literally, there is not any testimony in the record which has a tendency to indicate that the improvement was a distributing ditch, and not a lateral canal, so we conclude that this finding of fact by the trial court, which was approved by the Court of Civil Appeals, is without any substantial testimony to support it.

As to the other finding of fact, there is not any testimony whatever in the record in support of it. All the testimony conclusively establishes the fact to be that the improvement was of a permanent nature, and that the cost was considerable, not to mention the cost of maintaining the improvement in a usable condition. All the testimony shows that this improvement, after being constructed, was fitted for the uses for which it was intended, and that it has been so maintained all the while for the past twenty-five years. We therefore conclude that the second finding of fact by the

Court of Civil Appeals is not supported by any testimony.

In Texas Employers' Insurance Association v. Herring (Tex. Com. App.) 280 S. W. 740, 741, it is said: "It must be remembered that there must be more than a mere scintilla of evidence before it can be said that a judgment is supported by the testimony. Its probative force must do more than raise a mere suspicion or surmise of the existence of the fact sought to be established. The evidence must be reasonably sufficient to satisfy the minds of the jurors of the truth of the allegations. These rules are laid down by our Supreme Court in many cases."

The facts being as heretofore stated, it clearly appears that there is no claim by the defendants in error that the Neches Canal Company had ever abandoned the use of this lateral, nor is there any claim that they have at any time allowed it to become out of repair, as that it could not be used for the purposes for which it was constructed. Neither is there any claim that the expense of originally constructing it was not a considerable sum. The testimony shows that the small portion destroyed by the defendant in error Dishman would cost $250 to restore in its original condition. So whatever rights the Neches Canal Company had under the undisputed facts originally, they have now.

In T. & St. L. R. R. Co. v. Jarrell, 60 Tex. 267, quoting from the syllabus: "One who permits a railway company to enter upon his land and clear a right of way for its roadbed without objection, under verbal authority from him so to do, cannot afterwards repudiate the permission and maintain an action in trespass to try title to recover the strip so used for operating the road." And in Capps v. Texas & Pacific Ry. Co., 21 Tex. Civ. App. 84, 50 S. W. 643, the Galveston Court of Civil Appeals, among other things, said: "The defendant, having entered upon and taken possession of the land, for the purpose of constructing its line of railway thereon, under a verbal gift of the right of way * * * and having maintained and operated its railroad over the same for more than 10 years, cannot be ousted by the plaintiffs from its possession and use of the land as a right of way." Fort Worth & New Orleans R. Co. v. Sweatt, 20 Tex. Civ. App. 543, 50 S. W. 162; Knowles v. Northern Texas Traction Company (Tex. Civ. App.) 121 S. W. 232.

It is true the grant of the right of way across these lands is in parol, but equity will sustain a parol gift of land, notwithstanding the statute of frauds, where possession is taken and improvements of substantial value are made by the donee with the acquiescence of the donor upon the faith of the gift. Hutcheson v. Chandler, 47 Tex. Civ. App. 124, 104 S. W. 434; Hammond v. Hammond, 49 Tex. Civ. App. 482, 108 S. W. 1024.

The question of law here is one to the revocability or nonrevocability of an executed parol license, the execution of which has involved the expenditure of much money and where, from the very nature of the license given, it was to be continuous in use. Although the general rule is that a mere license is revocable at the will of the licensor, there are exceptions to this rule.

We are of the opinion that the facts in this case come within one of the exceptions. That is to say that where a licensee, upon the faith of the license given, and in accordance with the original understanding, places permanent and valuable improvements upon the thing given, the licensor has not the right to revoke the grant made until he had offered to do equity, by paying to the licensee the value of the improvements so placed upon the property. To allow the defendant in error J. A. Dishman, or any one similarly situated, to destroy the property belonging to the Neches Canal Company, without offering to compensate the company for the cost of the improvement, would be to countenance a fraud, and the rules of equity do not permit this to be done.

In Stoner v. Zucker, 148 Cal. 516, 83 P. 808, 810, 113 Am. St. Rep. 301, 7 Ann. Cas. 704 it is said: "The recognized principle, therefore, is that where a licensee has entered upon a parol license and has expended money, or its equivalent in labor, in the execution of the license, the license becomes irrevocable, the licensee will have a right of entry upon the lands of the licensor for the purpose of maintaining his structures or, in general, his rights under his license, and the license will continue for so long a time as the nature of it calls for. * * * In the case of irrigating ditches, drains, and the like, the license becomes, in all essentials, an easement, continuing for such length of time, under the indicated conditions, as the use itself may continue." To the same effect is the opinion in Shaw v. Proffitt, 57 Or. 192, 109 P. 584, 110 P. 1092, Ann. Cas. 1913A, 63.

We conclude that the temporary injunction issued in this case should have been made permanent under the undisputed facts, to continue in effect only so long as the plaintiff in error Neches Canal Company shall be under the duty to furnish the plaintiffs in error R. T. Pinchback and wife, and others similarly situated, by means of said canal, with water for irrigation purposes. Upon the occurrence of which event said injunction should be declared to be further inoperative. We further conclude that the plaintiffs in error R. T. Pinchback and wife, as well as all other parties similarly situated, have the right to demand of the plaintiff in error Neches Canal Company that it furnish water necessary to irrigate their lands for the growing of rice, so long as said Pinchback and wife, and others similarly situated, de-

sire to grow rice, and need water for that purpose. We further conclude that the plaintiff in error Neches Canal Company, when relieved of this obligation, will thereupon cease to have any right to maintain and operate their canal as they have heretofore been doing, and that owners of the lands, which are now burdened with the improvement belonging to the Neches Canal Company, will, in that event, be entitled to resume the exclusive possession and use of those portions of said land now occupied by the canal and its appurtenances belonging to the Neches Canal Company.

We therefore recommend that the judgments of the Court of Civil Appeals and of the district court be reversed, and that the case be remanded to the district court of Jefferson county, with instructions to enter a judgment perpetuating the temporary injunction heretofore issued in this cause, subject to the conditions hereinabove stated, and to hear testimony as to any and all other issues which the pleadings may present, including the issue of damages, and the issue of abandonment by any and all landowners of their original purpose, to require the Neches Canal Company to furnish water for irrigation purposes, and to render a judgment as the law under the testimony shall indicate, and not inconsistent with this opinion.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both reversed, and cause remanded, with instructions, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.