GREGG et al. v. CALDWELL–GUADALUPE
. PICK-UP STATIONS et al.
(No. 641–4503.)

(Commission of Appeals of Texas, Section B. Oct. 14, 1926.)

1. Abandonment ⬤⇒7.

Title to abandoned property vests in first person lawfully reducing same to possession.

2. Abandonment ⬤⇒7.

Abandoned personalty is no man's property until reduced to possession with intent to acquire title.

3. Abandonment ⬤⇒7.

First taker of abandoned personalty gets title only if taking has been fair.

4. Mines and minerals ⬤⇒81.

Prior oil and gas lease controls rights of later lessee in case of conflicting provisions.

5. Mines and minerals ⬤⇒80.

Oil and gas lease without specific grant, carries with it right to erect all structures necessary to produce and save oil.

6. Mines and minerals ⬤⇒73.

Lessor of oil and gas lease and his assignees retain right to take all abandoned oil on premises, regardless of its origin, subject to rights of lessee to produce oil.

7. Mines and minerals ⬤⇒73.

Rights of lessee and lessor in mineral lease are reciprocal and distinct.

8. Mines and minerals ⬤⇒81.

Lessee under oil and gas lease has right to erect structures necessary to produce and save oil, even if they should prevent lessor and his assignees from saving abandoned oil.

9. Mines and minerals ⬤⇒73.

Taking abandoned oil by trespasser vests no title in him, but leaves it in owner of soil.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by D. A. Gregg and others against the Caldwell-Guadalupe Pick-Up Stations and others. Judgment for plaintiffs was reversed by the Court of Civil Appeals (276 S. W. 342), and they bring error. Affirmed in part, and in part reversed and remanded to the district court.

W. K. Hopkins, of Gonzales, C. F. Richards, of Lockhart, and Leon Green, of Austin, for plaintiffs in error.

White, Wilcox, Graves & Taylor, of Austin, R. B. Ellis and Nelson Puett, both of Luling, and Dibrell & Mosheim and A. J. Wirtz, all of Seguin, for defendants in error.

SPEER, J. A statement of this case, as presented in the Court of Civil Appeals (276 S. W. 342), is thus made in the opinion of that court, reversing the judgment of the trial court:

"One of the appellants, the United North & South Oil Company, herein designated as the Oil Company, was the owner of an oil and gas lease executed in the year 1919 by J. E. Allen and wife. The lease was in the usual form of such contracts, and originally covered two tracts of land in Guadalupe county, embracing 140 acres and 200 acres, respectively. Prior to the transactions now in controversy, however, the lease was assigned in parts to others, so that C. C. Cannon became the lessee of the west 35 acres of the 140-acre tract, and the Grayburg Oil Company, the Texas Company, and the J. K. Hughes Company became the lessees of separate tracts embracing the north 65 acres of the 200-acre tract. This left under the original lease the east 105 acres of the 140-acre tract, and the south 135 acres of the 200-acre tract.

"The 200-acre tract and the 140-acre tract are oblong in form, extending east and west, and lying parallel to and adjoining each other. The 140-acre tract lies north of the larger tract; both tracts slope downward to the north, and drain through natural 'draws,' or ravines, into Brushy creek, which forms the north boundary line of the 140-acre tract. The 65-acre strip, covered by the leases of the Grayburg, Texas, and Hughes Companies, is only 600 feet wide, and lies between and completely segregates the residue of the two larger tracts, although both the latter are covered by the one lease, now owned by the Oil Company.

"Appellant Oil Company drilled a string of wells near the upper edge of its lower or 140-acre tract, and other wells at various points on its upper tract of 200 acres. The lessees of the narrow strip between these two tracts also brought in producing wells, as did other adjacent owners. All the tracts lay upon the same hillside, and waste oil from many of the wells flowed naturally with the slope, and down upon appellant's lower or 140-acre tract. In order to rescue and save the waste oil from its own wells on both tracts, the Oil Company constructed pits and ditches upon its lower tract, and in this way impounded the waste oil, not only from its own wells, but from those of adjacent tracts owned by third parties.

"In the early stages of these activities, on April 7, 1924, Allen, the lessor and owner of the soil of the tracts in controversy, executed to O. Lackey and another a license or grant of the exclusive right to 'build, operate, and maintain on the land therein described a plant for the purpose of picking up and conserving the waste oil that flows down the creeks, ravines, and across the land.' This grant purported to

cover the original 140-acre tract embraced in the first lease, and was subsequently assigned by Lackey to Gregg and others, appellees herein. At the time this grant was made the grantees and their assignees, who are appellees herein, had both constructive and actual notice of appellants' prior lease and its terms and conditions. Upon obtaining this grant appellees sought to construct pits and ditches of their own upon the 140-acre tract covered by both grants for the purpose of intercepting and impounding waste oil flowing thereon from adjacent leases.

"Appellees claim, however, that when they undertook to proceed with this operation they were ejected from the premises by appellant, and because of that ejectment made no further effort towards capturing and impounding the fugitive oil. All of this waste oil was appropriated by appellant, and appellees, of course, got none of it. If under their grant appellees had been permitted to carry out their plans, they claim they would have constructed pits, so as to capture this waste oil, which they would have appropriated to their own use; their contention being that all waste oil flowing from other premises than the 140-acre tract had been abandoned by its original owners, and that as the first takers they would have become the owners of it. They contend that, because appellant ejected them from its lease premises, they were deprived of a right given them under their grant to use those premises for the purpose of capturing and appropriating all waste oil flowing thereon from other premises, including the 200-acre tract covered by appellant's lease.

"The trial court adopted appellees' theory and contentions, and, upon findings of the jury, rendered judgment for appellees for the value of all waste oil flowing upon appellant's lower tract from other leases, including that originating from appellant's own wells in its upper, or 200-acre tract. The Caldwell-Guadalupe Pick-Up Company, one of the appellants, was employed by the Oil Company as its agent in constructing and operating its pits, and the judgment obtained by appellees was against both companies, who have appealed. For convenience in statement we have referred in this opinion to the Oil Company, only, as the appellant, and will continue to do so.

"The basic question in the whole case is that of the relative rights of the parties under their respective grants to the use of the surface of that part of the 140-acre tract covered by both grants."

In rendering judgment for the appellants, the Court of Civil Appeals reasoned that:

"Each party required the same drainage channels for the purpose of its grant; neither could use those channels to the exclusion of the other, although each claimed and under its grant was given such exclusive use. In such case the grants were inconsistent and repugnant, and appellant's grant, being prior and exclusive, and for a greatly preponderating purpose as well, must prevail. * * * The practical effect of appellees' grant, if enforced, would have been to destroy or seriously impair the easement guaranteed to appellant under its grant, which, being prior to that of appellees, was therefore superior to it; that when the waste oil, aban-

doned by third parties, flowed into these pits without the fraudulent connivance of appellant it thereby became the property of the latter as the first lawful taker after its abandonment, at least as against appellees; and that the latter was therefore not entitled to recover of appellant for the value of the product so taken."

[1-3] The conclusions here stated are not wholly sound. The principles applicable to abandoned property are fairly well understood and need not be elaborated here. It is sufficient merely to say that title to such property vests in the first person lawfully reducing the same to possession. Abandoned personalty is no man's property until reduced to possession with intent to acquire title. While the first taker gets title, and in this sense it may be said the race is to the swift, yet this is not absolutely true. The running must be fair. The question in the present case is affected by the following considerations:

[4] The lease to defendants in error, being prior in point of time, is superior to the grant to plaintiffs in error, so far as there is any conflict in the two instruments. They are not inconsistent or repugnant as thus interpreted, but each represents a valid grant, and confers exclusive rights according to the respective instruments. Each is supreme within its sphere. Whatever rights remained in the Allens as lessors they might lawfully grant to plaintiffs in error, but they could not in any wise interfere with the rights previously granted in the lease to defendants in error. The rights thus granted were specifically declared to be "the mining and operating for oil, * * * and building tanks, power stations, and structures thereon to produce, save, store, and take care of said production."

[5] Even without such specific grant of the right to erect such structures, it would have been implied so far as necessary to the full enjoyment of the grant made. The right to produce oil would be worth little, without the further right to do those other things necessary to the complete enjoyment of the major right. But, when all is said, the right of defendants in error under the lease extends no further than to the production of oil or gas upon the leased premises and the doing of those things expressly authorized or necessarily implied in the lease as a necessary incident to the business of producing oil or gas. Their rights on the land are thus limited.

[6, 7] Subject to this grant, the lessor retains all other rights originally owned by him. One of these rights, of course, was to take abandoned oil that might be found thereon, regardless of the source of its origin. Oil produced by defendants in error under their lease would not be subject to such taking by the owner, unless the same had been abandoned, when it would, as any

other abandoned property, be subject to the rights of the first lawful taker. This right of the owner is in no way destroyed by the oil lease. The rights of the parties to the lease are therefore reciprocal and distinct. Neither party can interfere with the rights of the other.

[8] In respect to waste oils upon land—and we do not here mean abandoned oils—the lessees have the superior right to build all structures and employ all proper means reasonably necessary to save, store, and take care of any oils produced by them upon the lease. They may exercise this right, even though it work a detriment to the owner, for this is the grant from the owner. Certainly the owner can do nothing to deprive the lessee of this right, or anywise lessen it. Of course, whatever the rights retained by the owner are, he can assign them to another; but that other occupies no better position. He stands in the shoes of the owner. He must respect any right of the lessee, which the owner as their common source would be required to respect. By reason of the order of priority, his rights are in all respects subject to the superior rights of the lessees. In applying these elementary considerations it would follow: The defendants in error would have the right at all, times to erect all structures, pits, and the like, at any place on the lease reasonably necessary, to save, store, and care for the oils produced by them, even though it resulted in also taking waste or abandoned oils originating from other sources, which the owner or his assignee would ordinarily have the primary right to receive, and would thus be lost to plaintiff in error; but, if such result is necessary to the full enjoyment of the grant and lease, it must follow. If the defendants in error can properly save, store, and care for their production without the necessity of appropriating what would otherwise belong to the owner, or plaintiffs in error as his assignees, they must, of course, do so. When they exceed their rights, they become trespassers. Likewise the plaintiffs in error, who hold the rights of the owner, may do those things authorized by their lease, so long as they do not interfere with the prior rights of the defendants in error under their lease. They may build all structures, pits, and the like necessary to take and save any abandoned oil coming onto the lease from any source whatever, or take any waste oil thereon, provided they do not interfere with the superior right of the defendants in error to do anything necessary to save and care for their own production, as hereinabove defined.

[9] It must be borne in mind the only rights of defendants in error are granted rights, and that all other rights of the original owner in the lands involved are in the plaintiffs in error. The defendants in error would not have the right to defeat plaintiffs in error in their efforts to capture abandoned oils escaping onto the lease. Any use of the land beyond the necessities in preserving their own oils would be a trespass. Taking abandoned oil, like the act of reducing an animal feræ naturæ into possession, where title is thereby created, must not be wrongful, and, if such an act is effected by one who is at the moment a trespasser, no title to the property is created in him; but it rests in the owner of the soil, and the wrongdoer is liable for the trespass and for conversion. 3 Corp. Jur. p. 20.

The rules governing the comparative rights of the parties are easy of statement. Let us see how the case has been determined to date. In the trial court, the case was made to turn upon the answer to special issue No. 2, as follows:

"Do you find from the evidence that, if not denied the right by the defendant, the United North & South Oil Company, the plaintiffs could and would have constructed and operated upon the Allen 140-acre lease or tract of land described in their petition dams, pits, reservoirs, and all such other and necessary structures and fixtures as were necessary under the circumstances to pick up the waste oil found upon said lease?"

This test makes defendants in error liable if the plaintiffs in error could and would have erected the structures necessary to pick up the waste oil found upon the lease, and completely ignores the superior rights of defendants in error as lessees hereinabove discussed. It assumes the right of plaintiff in error to be superior. It is completely at variance with the rules we have announced above. The charge was duly excepted to below and complained of in the Court of Civil Appeals.

As already shown, the Court of Civil Appeals has in effect held that defendants in error were fully warranted in locating their pits where they did, and that the practical effect of plaintiffs in error's grant, if enforced, would be to destroy or seriously impair the easement guaranteed to defendants in error. We do not agree with these conclusions. The evidence is not undisputed that it was necessary for defendants in error to construct their pits at the place selected by them. It is only in the event such necessity existed that they would be justified in their course. The case has not been tried upon that theory. It has not been sufficiently developed to justify a rendition.

We therefore recommend that the judgment of the Court of Civil Appeals, in so far as it reverses the judgment of the trial court, be affirmed, but, in so far as it renders judgment for the appellant in that court, that it be reversed, and the cause remanded to the trial court for disposition in accordance with this opinion.

CURETON, C. J. The judgments of the Court of Civil Appeals and the district court reversed, and cause remanded to the district court, as recommended by the Commission of Appeals.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.