CARLETON v. DIERKS et al.

No. 9638.

Court of Civil Appeals of Texas. Austin.

June 4, 1947.

Rehearing Denied June 25, 1947.

A. H. Lumpkin, of San Antonio, and H. A. Triesch, of New Braunfels, for appellant.

Mark V. Fuchs and Schleyer & Bartram, all of New Braunfels, for appellees.

McCLENTON, Chief Justice.

Appellees obtained a judgment establishing a "right-of-way and easement for a permanent roadway" over appellant's lands, and perpetually enjoining appellant, "his heirs and assigns," from locking the gates to the roadway, and from obstructing or interfering with the use thereof by appellees "and their respective heirs and assigns." In a prior appeal in the case an interlocutory order granting appellees a temporary injunction was affirmed. 195 S.W.2d 834, 837.

In the main the facts in the instant appeal are not essentially different from those in the former appeal, in the opinion in which they are epitomized as follows: "The Carleton tract, known as the Schwartz tract, consisted of 614.1 acres. It was located in Comal County. Its southern boundary was the Boerne-New Braunfels road; and its northern boundary in part was the southern boundary of land owned by plaintiffs or some of them. The Schwartz tract was owned by Alfred Engal from 1931 until April 1943, when he sold it to defendant. For over forty years prior to 1939 or 1940, plaintiffs and their families had used a roadway over the Schwartz tract as a passageway to and from their land. In October 1939 plaintiffs made a verbal agreement with Engal for a new road along a straight route over the tract, upon consideration of $20 paid by plaintiffs to Engal, and the further consideration that plaintiffs relinquish all right to the old roadway; would clear the new right of way; construct the new road thereon; build substantial gates where the new road entered and left defendant's premises; maintain the road and gates and permit Engal to use that part of the road leading to his premises. Plaintiffs performed their part of this agreement, expending therein over $500."

Additionally it was shown that appellees had expended some $1,200 on their own lands in constructing necessary approaches to the new right-of-way.

The judgment was predicated upon two special issue jury findings, namely:

1. That "plaintiffs, Dierks, made valuable and permanent improvements upon said right-of-way in reliance on Engal's oral agreement to provide them with a permanent right-of-way."

2. "That the locking of the gates across the road in question constitutes an unreasonable interference with plaintiffs' use and enjoyment of said road, even though plaintiffs were furnished with keys."

Of the seven points of error urged by appellant, the first four are predicated upon the contention that appellees' rights in the roadway constituted a mere revocable license, and that the court should have permitted such revocation upon appellant's offer to reimburse appellees for their outlay in this regard. The issues thus presented arise under the following record showing. After appellees had closed their case, and towards the end of appellant's evidence, he tendered a trial amendment alleging that he "recognizes that plaintiffs have a license to travel over and across the lands of defendant, said license being an oral license, and the defendant here now revokes said license, but as a condition precedent to such revocation offers to do equity, and here now tenders into the Registry of the court for the benefit of the plaintiffs the amount of money as may be legally determined to be due and owing to the plaintiffs for the expenditures that the plaintiffs have been put to on reliance upon the oral agreement of plaintiffs and Alfred Engal," etc. Among other objections to the filing of this amendment, appellees urged that it came too late. Permission to file the amendment was denied. Thereafter appellant offered evidence to show the amount of appellees' outlay upon the roadway, and tendered a special issue finding the amount thereof. No error is predicated upon the refusal to permit filing the trial amendment. The points urged are upon the exclusion of the proffered evidence and refusal to submit the tendered issue.

There are a number of grounds upon which these rulings of the trial court should be upheld. In the first place there was no pleading to support these issues. The action of the court in denying filing the amendment cannot be considered because not urged. But even were it urged, the

ruling should be sustained for the reason that it was a matter within the sound discretion of the court, Rule 66, Texas Rules of Civil Procedure, and no abuse of discretion appears.

But we do not think the record presents a case of a mere revocable license. On the contrary, we think a permanent easement was shown.

Even had there been no prior right to a roadway over the premises, the verbal agreement with Engal, and paying the consideration and making the permanent improvements in compliance therewith, were sufficient to support a permanent easement. Chief Justice Roberts, writing for the Supreme Court in 1875, said: "The owner of land may create an easement by a parol agreement or representation which has been so acted on by others as to create an estoppel en pais. As 'where he has by parol agreement granted a right to such easement in his land, upon the faith of which the other party has expended moneys which will be lost and valueless if the right to enjoy such easement is revoked, equity will enjoin the owner of the first estate from preventing the use of it.' (Washburn on Eas. and Serv., 97, and numerous cases cited.)" Harrison & Co. v. Boring & Kennard, 44 Tex. 255.

This rule which is one of general acceptation, has been consistently followed in this State. Texas & St. L. Ry. v. Jarrell, 60 Tex. 267; Bowington v. Williams, Tex. Civ.App., 166 S.W. 719; Miles v. Bodenheim, Tex.Civ.App., 184 S.W. 633.

An additional element in the instant case is that there was an old roadway across the premises which had been used by appellees and their predecessors in title for over forty years prior to the agreement with Engal; and it was a part of the consideration for the new roadway that appellees relinquish all right to the old roadway. This was a recognition of some right of appellees in the old roadway, and the agreement was in effect a re-routing or change in location of an existing roadway. It is a rule of general application that the location of an easement "may be changed with the express or implied consent of both parties, and an estoppel to claim a former location to be the true one arises from acquiescence in a change." 17 Am.Jur., p. 988, § 87. "It is competent * * * for the owner of the land and the person having a right of way over it to change the route or location of the way by mutual consent, and such consent may be implied from their acts and acquiescence." 28 C.J.S., Easements, p. 764, § 84. "When an easement has once been established, its location may be changed by an executed oral agreement between the owner of the servient estate and the owner of the dominant estate." Tripp v. Bagley, 74 Utah 57, 276 P. 912, 919, 69 A.L.R. 1417. See also Parker v. Thomas C. Cecil Lodge No. 375, 193 Ky. 136, 235 S.W. 16.

Appellant's contention that appellees' rights in the roadway were revocable at any time upon reimbursing appellees for their outlay is predicated upon an isolated quotation from Neches Canal Co. v. Dishman, Tex.Com.App., 44 S.W.2d 955, 960, to the effect that in order to exercise a right of revocation it is essential that the licensee be so reimbursed,—a well-established general principle. A careful reading of the opinion, however, leads to no other conclusion than that the rights acquired by the Canal Company (whether classified as a license or an easement) were not revocable. The facts there were substantially these: About 1905 the Canal Company, with verbal consent of the several landowners, had constructed a lateral canal extending eastward from its main canal for the purpose of irrigating some 2000 acres of land for rice culture, and had made contracts with the several landowners to furnish water from the lateral for that purpose. The lateral had been operated under this arrangement for some 25 years. Dishman owned a 100-acre tract over which the lateral passed, and Pinchback owned a tract to the east which was supplied with water from the lateral under contract with the Canal Company. It seems that Dishman and others served by the lateral, with the exception of Pinchback, had abandoned rice culture, and Dishman was proceeding to destroy the canal by plowing down its embankments. The Canal Company obtained a temporary injunction. The holding in the case is embodied in the following quotation : "we

conclude that the temporary injunction issued in this case should have been made permanent under the undisputed facts, to continue in effect only so long as the plaintiff in error Neches Canal Company shall be under the duty to furnish the plaintiffs in error R. T. Pinchback and wife, and others similarly situated, by means of said canal, with water for irrigation purposes. Upon the occurrence of which event said injunction should be declared to be further inoperative. We further conclude that the plaintiffs in error R. T. Pinchback and wife, as well as all other parties similarly situated, have the right to demand of the plaintiff in error Neches Canal Company that it furnish water necessary to irrigate their lands for the growing of rice, so long as said Pinchback and wife, and others similarly situated, desire to grow rice, and need water for that purpose. We further conclude that the plaintiff in error Neches Canal Company, when relieved of this obligation, will thereupon cease to have any right to maintain and operate their canal as they have heretofore been doing, and that owners of the lands, which are now burdened with the improvement belonging to the Neches Canal Company, will, in that event, be entitled to resume the exclusive possession and use of those portions of said land now occupied by the canal and its appurtenances belonging to the Neches Canal Company."

This was clearly a holding that the right of way for the lateral was not recoverable by the landowner, but was perpetual in nature, subject to be terminated if and when the purposes for which it was given should cease to exist. See also Motl v. Boyd, 116 Tex. 82, 286 S.W. 458, and cases therein cited, holding that the right to revoke a license may be lost by estoppel.

■ Appellant's fifth point challenges the sufficiency of the evidence to support the finding of special issue No. 2 that "the locked gates across the road in question constitutes an unreasonable interference with plaintiffs' use and enjoyment of said road, even though plaintiffs were furnished with keys."

Appellant's evidence upon this issue was to the effect that he had lost about 100 head of sheep and goats in three months, some of which were registered and worth from $35 to $125 per head; and "that he had seen a truck parked just outside of his ranch gate and with the gates wide open, whom he suspected of attempting to steal some of his sheep." On the other hand, testimony of appellees was to the effect that locking the gates caused great inconvenience and would not impede thieves from stealing appellant's livestock; that locking the gates would seriously interfere with use of the road by members of their families, their neighbors who visited them, and those who came to their ranches on business. It was shown that it was three miles from the county road to appellees' ranch houses; that the roadway in issue was an all weather one; afforded a much closer way to market, church and post office; was used by appellees, their families, friends, family doctor in making visits to them; by cattle buyers and gasoline trucks, and others whose way would be barred if the gates were locked. To furnish keys to all of these people would manifestly be impractical. It was also shown that appellant was not an experienced ranchman, that thieving was not common in that neighborhood, and appellant's assumption of such thieving was only surmise. Our conclusion upon this issue is thus expressed in our former opinion [195 S.W.2d 837]:

"* * * The question whether the locking of the gates and furnishing plaintiffs with keys was an unreasonable interference with use of the roadway by plaintiffs was clearly a fact issue for the trial judge [here the jury] to resolve. The right of the owner of the servient estate to have his property protected by gates, where none existed before, and where such gates already existed to lock them and furnish keys to the owner of the dominant estate, has been a fruitful source of litigation and not infrequently of more or less violent controversy. Full treatment of the legal aspects of the subject with citation of authorities is given in 28 C.J.S., Easements, § 98, pp. 781 et seq., under the heading 'Gates.' In Note 17, p. 782, it is said:

" 'Ordinarily locked gates across a way constitute an unreasonable burden which will not be permitted, even though the way

owner is furnished with a key. (Citing supporting cases.) (2) Under certain circumstances, however, locked gates may be permitted where the way owner is furnished a key.'"

Appellant's sixth point is to the effect that the injunction should not have been against appellant's heirs or assigns, since they were not parties to the suit. The portion of the judgment establishing the easement is unquestionably binding upon appellant's successors in title, whether they be heirs, assigns, or what not. The injunction feature of the judgment was but ancillary—a mere enforcement remedy. Allen v. Gulf Oil Corp., Tex.Civ.App., 139 S.W.2d 207. It is a general rule that injunctions are binding upon all parties having notice of them, whether or not they are parties to the suit in which they are granted. We see no reason why a prohibitory injunction to protect a right of this character, which constitutes a servitude upon land, should not operate against appellant's successors in title. Whether they would be punishable for violating its terms might be conditioned upon notice or knowledge. It does not seem reasonable to require appellees to bring a new suit to protect their rights from infringement every time there is a change in ownership of the servient estate.

If the injunction provision be invalid as to appellant's successors in title, such invalidity may be urged whenever enforcement is sought against them. It would seem that appellant has no justiciable interest in that issue, as his rights are in no way involved therein.

Appellant's seventh and last point complains because the injunction is not limited to continue only so long as appellees elect to use the road. "In the exercise of its inherent power, and without statutory authority or express retention in the decree of jurisdiction to modify, as well as where the decree itself reserves the right, a court which has rendered a final decree granting a permanent injunction may open, vacate, or modify such decree * * * where the continuance of the injunction is no longer warranted; [or] where the circumstances and situation of the parties are shown to have so changed as to make it just and equitable * * *." to do so. 43 C.J.S., Injunctions, pp. 956, 957, § 218. Extensive annotations on this subject will be found in 68 A.L.R., p. 1180, 136 A.L.R., p. 765, and 76 A.L.R. 1358. The rule was recognized in this State in Uvalde Paving Co. v. Kennedy, Tex.Civ. App., 22 S.W.2d 1091; and by the Supreme Court of the United States in I. & G. N. R. Co. v. Anderson County, 246 U.S. 424, 38 S.Ct. 370, 62 L.Ed. 807; and Milk Wagon Drivers Union v. Meadowmoor, 312 U. S. 287, 61 S.Ct. 552, 85 L.Ed. 836, 132 A. L.R., 1200. See also 28 Am.Jur. n. 494, § 323.

The trial court's judgment is affirmed. Affirmed.