Alvin H. PARKER, Appellant,

v.

TEXAS COMPANY et al., Appellees.

No. 5384.

Court of Civil Appeals of Texas.

El Paso.

July 15, 1959.

Rehearing Denied Aug. 3, 1959.

Will Hadden, Odessa, for appellant.

Stubbeman, McRae, Sealy & Laughlin, Wm. B. Browder, Jr., Perry Davis, Jr., W. N. Sands, J. S. Rowe, Midland, for appellees.

ABBOTT, Justice.

This is an appeal from a temporary injunction, in which both parties were enjoined from committing certain acts, and from which both have appealed.

The facts underlying this are: On January 20, 1937, The Texas Company became the owner of one-half the oil, gas, and other minerals in, on, or under the North one-half of Section 2, Block 44, Township 2 South, T. & P. Ry. Co. Survey, Ector County, Texas; and all the oil, gas and other minerals in, on, or under the South one-half of the same section. The mineral deeds each contained the following:

"* * * together with the right of ingress and egress for the purpose of drilling or mining for, and producing, storing and transporting oil, gas and other minerals, and of erecting any and all necessary structures for such drilling, mining, transporting and storing, and erecting any and all buildings necessary or incident to such operation; with the right to remove any and all property of whatever kind or character placed on said premises."

In August, 1951, appellant Alvin H. Parker acquired from his father, with full knowledge of the outstanding mineral deeds, the surface rights to the same Section 2.

On or about December 4, 1958, The Texas Company entered upon said Section 2. It appears from the testimony that some agent of The Texas Company had notified

both appellant and his wife that The Texas Company was preparing to enter the section and begin to develop their minerals. Texas Company felt this was necessary, in that oil was being produced from the adjoining section, and there was a possibility that oil was being drained from under Section 2.

There were meetings between appellant and agents of The Texas Company, in which appellant made certain demands as to where appellees were to enter Section 2; where roads were to be built; requiring fences around drill sites' and other easements; location of drill sites, and notification before appellees' entry to the original or any other site.

Appellant, during his ownership of the surface, had built two runways, a hangar for airplanes and a house, and was flying two airplanes from said Section 2. Appellant contended that, if appellees were allowed uncontrolled access to the section, it would interfere with the operation of his airplanes.

Appellee, The Texas Company, again informed appellant, on January 9, 1959, that appellee was going to enter the section and build a road to their first location. Appellant met appellee's agents, just after appellee had entered the section, armed with a pistol, but after realizing that The Texas Company agents intended using no force, put up the pistol. He testified: "They saw it (the pistol). When I realized they didn't intend to force their way in, I realized there was no need for firearms." At the same time, appellant had made an application for a temporary injunction, and this was served upon appellees at the above described meeting.

On the 21st day of January, 1959, the District Court heard the applications of both appellees and appellant for temporary injunction, and, after hearing both parties, enjoined them as follows: Appellant was enjoined from interfering, either by word, act or deed, with appellees from exercising their right of ingress and egress upon said

section for the purposes contained in their mineral deed. The order further described the method of entry by appellees; the width of the road to be built; the size of the drilling pad; construction and location of a tank battery; provisions for flow lines, etc., and additional drill sites. Appellees were enjoined to notify appellant seven days in advance, as to where they intended to enter Section 2 for the purpose of drilling the first well, and the location of all major structures and improvements; to notify appellant in writing at least 24 hours before taking steps to further develop said Section 2, in addition to the first well; as to any additional entranceways, and a metes and bounds description of the additional part of the surface The Texas Company intends to take in the further development of said section.

From this order appellant has brought six points of error:

"I. The Trial Court erred in granting the Temporary Injunction against Mr. Parker.

"II. The Temporary Injunction against Mr. Parker is erroneous, because it is vague, indefinite and uncertain, and therefore such Temporary Injunction against Mr. Parker is invalid and unenforceable.

"III. The Trial Court erred in granting any part of the Injunction Order against Mr. Parker other than in connection with the drilling of R. H. Speer No. 1.

"IV. The Trial Court erred in failing to describe, in its Injunction Order against Mr. Parker, the easement area by metes and bounds which The Texas Company is entitled to possess and use in drilling R. H. Speer No. 1.

"V. The Trial Court erred in refusing to enjoin The Texas Company to erect and maintain a substantial fence, as prayed for, around the easement area possessed and used in connection with the drilling of R. H. Speer No. 1.

"VI. The Trial Court erred in requiring only 24 hours advance written notice to be given to Mr. Parker by The Texas Company when The Texas Company takes further steps to develop its minerals after the drilling of R. H.

Speer No. 1."

and two counter-points:

"A. The Trial Court did not err in enjoining The Texas Company to give Mr. Parker written notice 7 days in advance of its entering Section 2 all as set out in the Trial Court's Temporary Injunction Order.

"B. The Trial Court did not err in enjoining The Texas Company to give Mr. Parker written notice in advance of The Texas Company taking further steps to develop the minerals on Section 2 in addition to the drilling of R. H. Speer No. 1, all as set out in the Trial Court's Temporary Injunction Order."

For brevity, Points 1 through 4 will be taken together, as will Points 5 and 6. Counterpoints A and B shall be discussed together.

The rights granted to The Texas Company in their mineral deeds contained this language, which is the basis for this suit:

" * * * together with the right of ingress and egress for the purpose of drilling or mining for, and producing, storing and transporting oil, gas and other minerals, and of erecting any and all necessary structures for such drilling mining, transporting and storing, and erecting any and all buildings necessary or incident to such operation; with the right to remove any and all property of whatever kind or character placed on said premises."

■■ It has long been held in this State that, where the surface estate is severed from the mineral estate, the mineral estate is the dominant one. Texas Pacific Coal & Oil Co. v. Truesdell, Tex.

Civ.App.1945, 187 S.W.2d 418; Gulf Production Co. v. Continental Oil Co., 1939, 139 Tex. 183, 132 S.W.2d 553, 164 S.W.2d 488.

These same cases hold that the rights of the mineral estate must be reasonably exercised with due regard to the rights of the surface owner, and the converse is also true. The surface owner is subject to the use in favor of the owner of the mineral estate, but can make such use of the land as is consistent with the exercise of the right to drill for and produce oil and gas therefrom. 31–A, Tex.Jur. 207, sec. 126; Humble Oil & Refining Co. v. L. & G. Oil Co., Tex.Civ.App., 259 S.W.2d 933; Robinson Drilling Co., Inc. v. Moses, Tex.Civ. App., 256 S.W.2d 650.

Under such a mineral estate the owner thereof, in the absence of an agreement otherwise, has the right to use as much of the surface of the land leased, and in such manner, as is reasonably necessary to effectuate the purpose of the lease. Warren Petroleum Corporation v. Monzingo, Tex., 304 S.W.2d 362, 65 A.L.R.2d 1352.

■■ In the present case appellant purchased the surface rights with full knowledge of the outstanding mineral deeds. As found by the trial court, appellant has interfered with the rights of the mineral estate owners, even to the extent of displaying a firearm while so doing. We believe the language of the injunction is sufficiently clear and concise to inform appellant of the exact nature of said order. We believe that the court was correct in applying the injunction to the whole of Section 2, and not just to the first location. The original mineral deeds are to the whole of Section 2, and from the cases cited it is quite evident that appellees can drill anywhere in Section 2 that they so desire, as long as such use is reasonable. By the same token, the trial court did not err in failing to describe, by metes and bounds, the easement for the first well. Warren Petroleum Corporation v. Monzingo, supra.

The first four points of error are overruled.

 Appellant insists that he is entitled to have appellees build and maintain a substantial fence around the easement area possessed and used by appellees. The use, by the mineral owners, of this section was undoubtedly before the grantor at the time such mineral deeds were made. Had any exceptional requirements been wanted at that time, they should have been included in the deed. It is too late now to include them in that agreement. If unusual or unreasonable damage results to the surface because of acts of appellees, appellant has his remedy at law. We believe that the "cattle" cases—Warren Petroleum Corporation v. Martin, 153 Tex. 465, 271 S.W.2d 410, and other cases cited therein—are also applicable to this case. Appellant's fifth point is overruled.

In his sixth point of error, appellant complains that only twenty-four hour notice was required of appellees when further steps to develop its minerals were contemplated. We believe that any notice to appellant by appellees is a burden that was not contemplated by the original deeds. At any rate, we can find no authority, under Texas law, where such a rule would be applicable to the circumstances of this situation. Gulf Oil Corporation v. Whitaker, 5 Cir., 257 F. 2d 157.

The record shows that Texas Company gave notice to appellant, even though not required to do so, when they originally intended to enter Section 2. Point of Error number six is overruled.

In the two counterpoints submitted by appellant he states that the trial court was correct in requiring The Texas Company to give written notice of their operations to appellant. We cannot find support for the action of the trial court in requiring such notice. This is not a burden placed upon appellees by the original contract, nor is it the law. Gulf Oil Corporation v. Whitaker, supra.

Having discussed this with the previous points, we believe the portion of the temporary injunction by the trial court enjoining The Texas Company (appellee), must be reversed and rendered, and that portion of the temporary injunction enjoining appellant, affirmed.