**A. R. DILLARD, Jr., Appellant,**

v.

**Glen BALL, Appellee.**

**No. 5058.**

Court of Civil Appeals of Texas, Eastland.

Aug. 17, 1978.

Rehearing Denied Sept. 21, 1978.

Randy J. Hall, Fillmore & Camp, Fort Worth, John D. Moore, Mineral Wells, for appellant.

Elton M. Montgomery, Jennings Montgomery & Dies, Graham, for appellee.

McCLOUD, Chief Justice.

At issue is the liability for damages of a surface lessee who denies the mineral lessee access to the leased property by intentionally locking the entrance gate to the property and not providing the mineral lessee with a key.

The mineral estate and surface estate had been severed prior to the surface lease of the ranch in question. The surface lessee, Glen Ball, on April 11, 1973, entered into a

surface lease covering approximately 7,000 acres, effective to May 31, 1978, with the surface owners who also owned an undivided interest in the minerals. Subsequent to April 11, 1973, the mineral owners, including the surface owners, entered into oil, gas and mineral leases owned by the mineral lessee, A. R. Dillard, Jr., at the time in question. On or about September 9, 1975, while the oil, gas and mineral leases were in effect, and the mineral lessee was in the process of building a road on the leased property, the surface lessee locked the gate at the entrance of the ranch. The surface lessee did not furnish the mineral lessee a key to the lock. On September 22, 1975, the mineral lessee sued the surface lessee seeking an injunction enjoining the surface lessee from interfering with the mineral lessee's rights of ingress and egress to and from the property for the purpose of exploring and developing the oil, gas and other minerals. The mineral lessee specifically requested that the surface lessee be restrained from placing a lock on the gate at the entry way to the ranch. The surface lessee filed a cross-action seeking, among other things, a declaratory judgment as to the respective rights of the parties under their leases, and the effect of an alleged oral agreement between the parties respecting the payment by the mineral lessee to the surface lessee of certain surface damages. The surface lessee sought an injunction enjoining the mineral lessee from using the "mountain road" located on the ranch. The surface lessee alleged that the mineral lessee was not authorized to use such road and under the surface lessee's lease, he was or might be liable for damages resulting to such road. On October 17, 1975, the court entered an order agreed to by the surface lessee, mineral lessee, and surface owners, which stated that the mineral lessee, his employees, assigns, agents and contractors were perpetually enjoined from using that "part of the road up the mountain . . . which is presently covered by asphalt." The order provided that the surface lessee, his agents and assigns were perpetually enjoined from interfering with, blocking or otherwise preventing ingress and egress to

and from the property by the mineral lessee, his employees, assigns, agents and contractors, while exploring and developing the property for oil and gas purposes. The agreement stated that the surface owners relieved the surface lessee of liability "for the maintenance of the road from the gate at the south end of the ranch . . . to the point where the asphalt road begins . . . ." The order also stated that the mineral lessee had the duty to maintain any roads that he, his employees, assigns, agents or contractors used.

Following entry of the above described interlocutory order, the parties proceeded to trial on the issues of the alleged oral agreement regarding surface damages and the alleged damages resulting because of the surface lessee's conduct in denying the mineral lessee access to the property. The mineral lessee contended that the surface lessee's conduct delayed the drilling of certain wells and he incurred additional expenses as a result of the delay. In answer to special issues, the jury found that the mineral lessee suffered damages as a result of the surface lessee's conduct in denying him access to the property; that $10,834.22 would reasonably and fairly compensate the mineral lessee for the damages; and, that the parties did not enter into the alleged oral agreement regarding payment to the surface lessee of certain damages for use of the surface.

The mineral lessee's motion for judgment on the verdict was denied. The surface lessee filed a motion for judgment "upon the jury's verdict, or notwithstanding such verdict . . . ." The court entered judgment that neither party recover against the other party. The judgment stated:

"The court's attention was called to the fact that the plaintiff's damage issues were submitted to the jury without any related liability issues and that under Rule 279 of the Texas Rules of Civil Procedure the court may not make findings on such omitted issues inasmuch as the same must necessarily be relied upon by the plaintiff as a part of his case, and the court therefore is of the opinion and

so finds, based upon the verdict of the jury, the evidence and the law applicable thereto:

That neither party is entitled to recover damages from the other and that both plaintiff and cross-plaintiff should be denied any recovery."

The agreed interlocutory order dated October 17, 1975, was incorporated into and made a part of the final judgment. The court's judgment clearly shows that it was "based upon the verdict of the jury". The court did not enter a judgment non obstante veredicto nor judgment after having disregarded a special issue finding by the jury.

The mineral lessee argues the court erred in denying his motion for judgment on the jury's verdict because the surface lessee's liability was conclusively established and he was not required to submit any additional issues. We agree.

The surface lessee knew that the mineral lessee had an oil, gas and mineral lease on the property at the time the surface lessee locked the gate. The surface lessee argues that he locked the gate because the mineral lessee's "tractor was tearing up sections of the hill road and his employees were using the road" and he was afraid they would hold him responsible for any "damages that they might come up with".

The surface lessee relies upon the following language contained in his surface lease:

"3. LESSEE is responsible for the maintenance and upkeep of the hill road leading into the subject property. This road is the property of the LESSOR, and any load of over 12,-000 # going up and 24,000 # coming down is specifically prohibited. LESSEE shall have no authority to authorize the use of this road except for uses authorized by this lease."

The surface lease also provided:

"The LESSOR reserves the right to itself, its agents, assigns or employees to enter the property at any reasonable time for the purpose of:

. . . . .

C. Developing oil, gas and other mineral resources."

The surface owners' oil, gas and mineral lease covering the property in question provided:

"Lessee shall not use the present road up the mountain in the Southeast corner of the property. Lessee shall take adequate precautions to prevent any of his employees, agents, invitees, or others from using said road."

■ The surface lessee's lease expressly provided that the surface owners' assigns had the right to enter the property for the purpose of developing the property for oil, gas and other minerals. The mineral lessee's estate is the dominant estate. *Sun Oil Company v. Whitaker,* 483 S.W.2d 808 (Tex. 1972). He had the right to enter the property for the purpose of exploring and extracting the minerals. *Harris v. Currie,* 142 Tex. 93, 176 S.W.2d 302 (1943); *Stanolind Oil & Gas Co. v. Wimberly,* 181 S.W.2d 942 (Tex.Civ.App.—El Paso 1944, no writ).

The surface lessee was asked the following questions and he gave the following answers:

"Q You knew that after you took this lease, the grass lease or the surface lease someone could come in there and build a road, have the right to come in and cross that property and develop it for oil property, you knew that?

A Yes, I knew they could come in, it says so in the lease.

Q All right. And on or about September the 3rd, 1975, you locked the property and denied access to Bud Dillard, is that not correct?

A On the first part of September, yes, I locked the front gate.

Q All right. That would be on or about September the 3rd, 1975?

A I believe that it was—would you like for me to look and see what the date was?

Q Whatever it takes.

A I believe it was on the 9th of September.

Q You think it was the 9th?

A Yes.

Q   All right. At any rate, it remained locked until the Court ordered you to open it?

A   I think that's right, yes.

Q   All right. Do you recall when you opened it?

A   Well, it was sometime in October.

Q   All right."

■ The mineral lessee argues that the evidence conclusively establishes that the surface lessee became a trespasser when he intentionally and deliberately interfered with a property right of the mineral lessee. We think the proper inquiry in a case of this nature is whether the surface lessee unreasonably interfered with the mineral lessee's right to enter the property in question. The "unreasonable interference" issue was recognized in *Getty Oil Company v. Royal,* 422 S.W.2d 591 (Tex.Civ.App.—Beaumont 1967, writ ref'd n.r.e.), wherein the jury found that the erection of gates by the surface owner across the mineral lessee's roads would not constitute an unreasonable interference with the mineral lessee's use of the roads in the operation of its oil and gas lease. The evidence in *Getty Oil Company,* supra, showed that the gates were not to be locked. There was evidence that the land was being damaged by trespassers using the roads who discarded litter, trash and other objects harmful to cattle. The courts in *Texaco, Inc. v. Parker,* 373 S.W.2d 870 (Tex.Civ.App.—El Paso 1963, writ ref'd n.r.e.) and *Carleton v. Dierks,* 203 S.W.2d 552 (Tex.Civ.App.—Austin 1947, writ ref'd n.r.e.) observed that usually "unreasonable interference" is a fact question when the owner of the servient estate locks a gate and furnishes the owner of the dominant estate with a key. In the instant case, the mineral lessee was not furnished a key. It is clear from the record that the surface lessee, by locking the gate, fully intended to deny the mineral lessee access to the property. We hold that the evidence conclusively establishes that the surface lessee unreasonably interfered with the mineral lessee's right to enter the property. The fact that the mineral lessee had made some use of the "mountain road" did not authorize the surface lessee to lock the gate and deny the mineral lessee access to the property.

There is some evidence of an "old road" that entered the ranch from the north. The evidence, however, conclusively establishes that because of the rough terrain it would be impractical for the mineral lessee to use the "old road" in the development of the property.

■ Since the evidence conclusively established that the surface lessee unreasonably interfered with the mineral lessee's right to enter the property, it was not necessary to submit the issue. Rule 279, T.R. C.P.

The trial court erred in denying the mineral lessee's motion for judgment on the jury's verdict. Rule 301, T.R.C.P., states that the judgment shall conform to the verdict, unless upon proper motion and notice, the trial court renders judgment non obstante veredicto or disregards a jury finding. The surface lessee has no cross-points. His counterpoints fail to uphold the court's entry of judgment "based upon the verdict of the jury".

Judgment of the trial court is reversed and judgment is rendered that the mineral lessee, A. R. Dillard, Jr., recover from the surface lessee, Glen Ball, the sum of $10,-834.22 plus interest thereon at the rate of nine percent per annum from February 7, 1977. *American Paper Stock Company v. Howard,* 528 S.W.2d 576 (Tex.1975).