Glen BALL, Petitioner,

v.

A. R. DILLARD, Jr., Respondent.

No. B–8026.

Supreme Court of Texas.

June 25, 1980.

Rehearing Denied July 30, 1980.

Jennings, Montgomery, Dies & Turner, Elton M. Montgomery, Graham, Groce, Locke & Hebson, Thomas H. Crofts, Jr., San Antonio, for petitioner.

Fillmore & Camp, Randy J. Hall and H. Dustin Fillmore, Fort Worth, John D. Moore, Mineral Wells, for respondent.

DENTON, Justice.

This action was brought by A. R. Dillard, Jr., the mineral lessee, for damages and injunctive relief against Glen Ball, the surface lessee, who denied the mineral lessee access to the leased property. Ball filed a cross action seeking damages for the breach of an alleged oral contract, and for injunctive relief to prevent Dillard from using an asphalt road during his drilling operations. The trial court entered an agreed order granting the injunctive relief sought by the respective parties and submitted the damage issues to a jury. The trial court granted Ball's motion for judgment non obstante veredicto and denied recovery of damages to both parties. The court of civil appeals reversed and rendered judgment in favor of Dillard for the damages found by the jury. 570 S.W.2d 465. We affirm the judgment of the court of civil appeals.

In 1973, Glen Ball entered into a surface lease with land owner Guy Robinson for a term of five years. In 1974, A. R. Dillard, Jr. entered into a mineral lease with Robinson covering the same ranch property. Later, in the summer of 1975, Dillard went onto the property and began preparations for drilling. On the southeast corner of the property was a "mountain road;" however, the mineral lease excluded its use in the drilling operations, and it was necessary for Dillard to build another road up the mountain. Construction of a new road was begun where the land owner had suggested. For some time Dillard's employees used the south gate entrance in building the new road and preparing for drilling. September 9, 1975, Ball locked the south gate and did not provide a key for Dillard or his employees. On September 22, 1975, Dillard filed a suit against Ball seeking an injunction to enjoin him from interfering with his rights as mineral lessee of ingress and egress for exploration and development of oil and gas. Ball filed a cross action seeking declaratory relief defining the rights of the parties under their respective leases, and under an alleged oral agreement between them. The cross action further sought an injunction enjoining Dillard, the mineral lessee, from using the "mountain road" located on the

southeast corner of the ranch. Dillard subsequently amended his petition to seek damages caused by the lockout from the premises.

On October 17, 1975, Dillard and Ball, joined by the land owner Robinson and the Fort Worth National Bank as Trustee, agreed to an interlocutory order which enjoined Dillard from using the asphalt portion of the existing "mountain road;" enjoined Ball from interfering with Dillard's ingress and egress; relieved Ball of his responsibility from maintaining the "mountain road" from the gate to the point where the asphalt began, and required Dillard to maintain any roads used in his operations. The parties then proceeded to trial on the damage issues. In response to the special issues the jury found: (1) Dillard had suffered damages as a result of Ball denying him access to the property; (2) Dillard had suffered damages in the amount of $10,834.22; (3) there was insufficient water available to Dillard for drilling purposes on the property; and (4) the parties had not entered into an agreement to pay Ball for the surface damages he sought.

The trial court denied Dillard's motion for judgment on the verdict, granted Ball's motion for judgment non obstante veredicto, and denied recovery of damages to both parties. The court of civil appeals reversed and rendered judgment for the mineral lessee for the damages found by the jury.

Ball contends that the respective rights of the surface and mineral lessees emanate from their respective leases from a common lessor. He contends that the reserved general right of entry for mineral exploration must be read in conjunction with the other provisions of the Ball surface lease, which had been recorded in the deed records of Palo Pinto County one month prior to Dillard's mineral lease. In addition to Ball's express obligation to the lessor with respect to the maintenance of the "mountain road" leading into the property, the lease further provides that the road is the property of the lessor and any load over 12,000 pounds going up the road or 24,000 pounds coming

down the road is specifically prohibited. The surface lessee was given no authority to authorize the use of this road except for use as authorized by the lease. He was further obligated to "keep improvements in as good repair and condition as they may be put during the term of the lease . . . unavoidable depreciation and destruction excepted." The mineral lease covering the same property provided as follows:

Lessee shall not use the present road up the mountain in the Southeast corner of the property. Lessee shall take adequate precautions to prevent any of his employees, agents, invitees, or others from using said road.

█ The mineral lease gave Dillard the dominate estate. He had the right to use as much of the premises and in such a manner, absent an express limitation, as was reasonably necessary to comply with the term of the lease and to effectuate its purposes. *Sun Oil Co. v. Whitaker*, 483 S.W.2d 808 (Tex.1972); *Humble Oil & Refining Co. v. Williams,* 420 S.W.2d 133 (Tex. 1967); *Warren Petroleum Corp. v. Martin*, 153 Tex. 465, 271 S.W.2d 410 (1954). A grant of minerals would be worthless to a grantee if he could not enter upon the land for exploration and extraction of the minerals granted. *Harris v. Currie*, 142 Tex. 93, 176 S.W.2d 302 (1943); *Stanolind Oil & Gas Co. v. Wimberly*, 181 S.W.2d 942 (Tex.Civ. App.—El Paso 1944, no writ).

Ball concedes that he denied Dillard access to the lease property by locking the gate to the only usable road into the property, but argues that whether this was an unreasonable interference with Dillard's right of access to the property is a fact issue to be determined from all the circumstances in the case. Ball argues that if he does not have an absolute right to prevent a mineral lessee from coming upon the land in order to carry out his contractual duty to maintain the "mountain road," that he has a correlative right to do so under the respective lease agreements.

In reviewing the provisions of Ball's surface lease, it clearly gives Ball neither "an absolute" nor "correlative" right to restrain the mineral lessee from going upon the land to develop the mineral estate. As previously stated, Dillard, the mineral lessee, holds the dominant estate, and as such has the right of ingress and egress upon the land for exploration and production of oil and gas. In so doing he must not make an unreasonable use of the surface. If he does he can be held accountable in damages. *Robinson v. Robbins Petroleum Corp., Inc.*, 501 S.W.2d 865 (Tex.1973), and *Sun Oil Co. v. Whitaker*, 483 S.W.2d 808 (Tex.1972). When Ball locked the gate to the property, he denied Dillard access to the leased property, and was exercising a right not given to him by his surface lease. As holder of the surface lease, he had no legal right to deny the mineral lessee, Dillard, access to the land for mineral development purposes. *Parker v. Texas Co.*, 326 S.W.2d 579 (Tex. Civ.App.—El Paso 1959, writ ref. n. r. e.); *Phillips Petroleum Co. v. Cargill*, 340 S.W.2d 877 (Tex.Civ.App.—Amarillo 1960, no writ). Thus, Ball, as surface lessee, has exceeded his rights under the lease, and in so doing has unreasonably interfered with the rights of Dillard, the mineral lessee. In *Brown v. Lundell*, 162 Tex. 84, 344 S.W.2d 863 (1961), this Court held that the rights of the surface holder and the mineral estate holder are reciprocal and distinct. Neither party can interfere with the rights of the other. *See also, Gregg v. Caldwell-Guadalupe Pick-Up Stations*, 286 S.W. 1083 (Tex. Comm'n App.1926, holding approved). Therefore, we hold that the evidence conclusively establishes that Ball, the surface lessee, unreasonably exceeded his rights by denying Dillard access to the property for development purposes.

█ Dillard had entered into an oral contract with Bob Lindsey, owner of Lin-Mour Drilling Co., in June of 1975, to drill three oil wells on the mineral lease. The drilling originally was to begin in August 1975, but it was later extended to the first part of September 1975. When Dillard was denied access to the property on September 9, 1975, he was required to cancel this drilling contract. The initial drilling contract called for a cost of $6 per foot and $60 per hour

"day work." When drilling operations were later begun on November 8, 1975, the cost of drilling had risen to $6.50 per foot and $75 per hour "day work." The damages found by the jury was clearly supported by the evidence.

The judgment of the court of civil appeals is affirmed.

Dissenting opinion by SPEARS, J., in which STEAKLEY, BARROW and CAMPBELL, JJ., join.

SPEARS, Justice, dissenting.

I dissent.

The question presented is whether a surface lessee is liable as a matter of law for damages caused to the mineral lessee when he locks a gate leading onto the property, thus preventing the mineral lessee from entering the property through the gate. The court of civil appeals has held that no jury issue on liability was raised by the evidence in this case and has rendered a judgment based on the jury's answers to the damages issues. 570 S.W.2d 465. I would reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

Normally, when a plaintiff fails to secure a finding on the issues required to establish liability, he loses. In this case, however, the defendant Ball has lost even though the crucial issue was never decided by the jury—whether Dillard could enter through the gate without using the hill road. The plaintiff Dillard never established where the hill road began or whether he had a *right*, violated by Ball, to use the road.

The majority opinion in effect holds that Dillard's lease entitled him to use the gate as a matter of law. At no place in the opinion is it revealed why Dillard's right to ingress and egress controls in the face of the express prohibition in Dillard's lease concerning the use of the hill road. Moreover, at no place does the majority address the predicament in which Ball found himself when Dillard was damaging the hill road that Ball was contractually obligated to protect.

Ball holds a surface lease and Dillard holds a mineral lease from a common lessor, Robinson. Ball's surface lease, first in time and recorded in the deed records of Palo Pinto County, provides in pertinent part:

"*LESSEE is responsible for the maintenance and upkeep of the hill road* leading into the subject property. This road is the property of the LESSOR, and any load of over 12,000 # going up and 24,000 # coming down is specifically prohibited. LESSEE shall have no authority to authorize the use of this road except for uses authorized by this lease.

. . . . .

*LESSEE will maintain the property* during his tenancy in as good condition as at the beginning, normal wear and depreciation and damages from causes beyond LESSEE'S control excepted.

. . . . .

LESSEE will keep the building, fences and *other improvements* on the property in as good repair and condition as they may be put during the term of the lease, ordinary wear and tear, loss by fire, or unavoidable depreciation and destruction excepted.

. . . . .

*LESSEE will not commit waste or damage* to the property *and will use due care to prevent others from so doing.*" (emphasis added).

Ball's lease also provides:

"The LESSOR reserves the right to itself, its agents, assigns, or employees to enter the property at any reasonable time for the purpose of:

. . . . .

C. Developing oil, gas, and other mineral resources."

Dillard's mineral lease from the same lessor, contains the following provision:

"*Lessee shall not use the present road up the mountain* in the Southeast corner of the property. Lessee shall take adequate precautions to prevent any of his employees, agents, invitees, or others from using said road." (emphasis added).

The two leases cover the same ranch property. The ranch sits on top of a hill. There is a road known as the "hill road" or "mountain road" leading up the hill from a gate located at the southeast corner of the property. The road in question is a dirt road immediately inside the gate; however, at some point a short distance from the gate, it becomes an asphalt road that continues to the top of the hill. The record does not indicate whether the "hill road" begins at the gate or whether it begins at some point inside the gate. The assumption made by the majority that the "hill road" begins at the asphalt is not supported by the evidence.

Under his lease with Robinson, Dillard was denied the use of the existing hill road, and it was necessary for him to build a new road for purposes of mineral exploration. Dillard testified that Robinson had told him where he could build a new road parallel to the existing hill road. For some time, Dillard's employees used the gate at the southeast corner of the property to enter the property for the purpose of building a new road.

A dispute arose while Dillard's road was being constructed, and on September 9, 1975, Ball locked the gate. He did not provide a key for Dillard. There was conflicting testimony concerning the facts surrounding the dispute, but Ball testified:

"Q. All right. Did that make the asphalt road that was there less usable?

A. Well, yeah. They piled dirt on the end of it and it made it hard to get on and off of."

Ball also testified:

"A. Well, I was concerned about the road and I asked Mr. Robinson and I asked Mr. Dillard, and I didn't get any satisfaction out of any one of them. Mr. Dillard said he couldn't agree and he was just going to build his own road. So I looked and saw what they were doing, and they were destroying part of the road up the hill and using parts of it for their own use, and so I called the bank in Fort Worth and I talked to Mr. Robinson's attorney, Mr. Ken Tarleton, and I said, 'Say, they are using this road out here and I don't know—I am kind of in the middle and I don't know what to think about it.' Mr. Dillard claims that it doesn't include that they are staying off the part that's included and this that and the other and I said, 'What is the hill road?' So Mr. Tarleton said the hill road is the road from the gate to the top of the hill. And I said, 'Well, fine. That's what I wanted to know.'

Q. All right. And for those reasons then did you have the occasion to lock the gate shortly thereafter?

A. Yeah. I did.

. . . . .

THE WITNESS: I locked the gate because Mr. Dillard's tractor was tearing up sections of the hill road and his employees were using the road and I was afraid that they would hold me responsible for any damage that they might come up with."

On September 22, 1975, Dillard filed this suit seeking an injunction to require Ball to remove the lock and allow Dillard ingress and egress through the gate. Ball filed a cross action seeking a declaration of the parties' respective rights under the leases and an alleged oral agreement for surface damages. Dillard amended his pleadings to seek money damages resulting from the lockout. On October 17, 1975, the court signed an interlocutory order agreed to by the parties and Mr. Robinson, the common lessor. That agreement relieved Ball of liability to Robinson for maintenance of the portion of the hill road from the gate to where the asphalt begins, enjoined Dillard from using the asphalt portion of the hill road, obligated Dillard to maintain any roads he used, and enjoined Ball from interfering with Dillard's ingress and egress through the gate. The parties then went to trial on Ball's allegation of an oral promise to pay surface damages and Dillard's suit

for damages resulting from the six-week lockout.

The jury found that there was no oral agreement to pay surface damages, that Dillard suffered damages as a result of the lockout, and that Dillard's damages amounted to $10,834.22. Ball objected to the trial court's failure to submit any issue that would establish his liability. The trial court rendered judgment on the verdict that neither party recover damages from the other. Ball was denied recovery because the jury found no oral agreement; Dillard was denied recovery because no liability issues were submitted and none requested. The court of civil appeals reversed, holding that Ball's liability was conclusively established by the mere fact that he locked the gate, and thus, only the existence and amount of damages were required to be submitted to the jury.

A mineral lessee, as the owner of the dominant estate, has the right to the use and possession of so much of the surface as is reasonably necessary to realize the benefits and purpose of his estate—the production of minerals. *Getty Oil Co. v. Jones*, 470 S.W.2d 618, 621 (Tex.1971). This rule applies when both the owner and mineral lessee have the right of dual possession of the surface. The situation here, however, is different because the usual rights of the dominant estate holder have been limited by the specific covenants in the lease. *See Humble Oil & Ref. Co. v. Williams*, 420 S.W.2d 133, 134–35 (Tex.1967).

Dillard argued to the court of civil appeals that Ball became the trespasser by intentionally interfering with a property right of the mineral lessee. Dillard relied on the rule of law that the mineral estate is the dominant estate and on his right of ingress and egress. The court of civil appeals, while not accepting Dillard's trespass theory, held that the proper inquiry was whether Ball "unreasonably interfered" with the mineral lessee's right to enter the property, citing *Getty Oil Co. v. Royal*, 422 S.W.2d 591 (Tex.Civ.App.—Beaumont 1967,

writ ref'd n. r. e.); *Texaco, Inc. v. Parker*, 373 S.W.2d 870 (Tex.Civ.App.—El Paso 1963, writ ref'd n. r. e.); *Carleton v. Dierks*, 203 S.W.2d 552 (Tex.Civ.App.—Austin 1947, writ ref'd n. r. e.). The court held that, as a matter of law, Ball had unreasonably interfered with Dillard's right of ingress and egress.

The cases relied upon by the court of civil appeals and the majority are inapplicable. In those cases there was a *right of dual possession* of the surface between the dominant mineral estate and the servient surface estate, and thus, the dominant estate holder was entitled to make such use of the surface as was reasonably necessary to realize the benefits and purposes of his estate. As to the hill road, however, the present case does not involve dual possession because, by an express covenant in the mineral lease, Dillard is denied use of the hill road, and because the express terms of the surface lease require Ball to use due care to prevent damage to that road. Therefore, the majority's opinion is predicated on the incorrect premise that this case involves the right of dual possession.

The initial inquiry in this case is where the beginning point of the hill road is located, and the ultimate fact issue is whether Dillard could have entered the property through the gate without using the hill road. Whether Dillard had a right to enter the property through the southeast gate depends on the resolution of this issue. While Dillard may have an absolute right of entry onto the land, he does not necessarily have right of entry through this particular gate. If the hill road starts at the gate, Dillard, under his lease with Robinson, has no right of entry, and Ball cannot be liable for prohibiting Dillard's entry through the gate.[1] If the road begins at some point inside the gate, Dillard would have a right of entry only if he could enter the property through the gate without using the road. If he cannot, he has no right to enter through that gate. In either event, the evidence raises a fact issue which was not submitted to the jury.

---

1. Ball, the surface lessee, was under no obligation to provide a way for Dillard to get on the land. Robinson, Dillard's lessor, had this obligation. Moreover, the evidence is that there was at least one other gate onto the property.

Unless liability is stipulated, it is the burden of an aggrieved party to establish liability as a predicate to obtaining relief. Here, in order to establish that Ball interfered with his right of ingress and egress, it was incumbent upon Dillard to show that he had the right to enter through the locked gate. The evidence does not conclusively establish this right. On the contrary, the only direct evidence about where the hill road began was Ball's account of the statement, by Robinson's attorney that the road began at the gate. This testimony is *some* evidence that Dillard had no right to use the gate. Since Dillard failed to establish conclusively that Ball interfered with any right of Dillard and requested no issue that would establish Ball's liability, the judgment of the trial court denying recovery to Dillard was a correct one. Tex.R.Civ.P. 279.

The majority opinion under the facts presented here holds Ball responsible for a conflict which he did not create. Although Dillard has the right of ingress and egress, the common lessor, Robinson, denied Dillard the use of the existing road and required Ball to maintain and protect that road. Ball was thus caught in the middle: if he locks the gate, he is sued by the mineral lessee; if he does not lock the gate, he is sued by the property owner for damage to the hill road. The opinion of the court of civil appeals requires Ball to resolve this conflict created by Robinson.

Moreover, under the majority opinion, Ball would be liable even if Dillard's lease had provided that, "The mineral lessee shall not use the hill road from the gate to the top of the hill in any manner whatsoever." The majority opinion would create a right of dual possession despite lease provisions expressly to the contrary. The surface lessee would be powerless to prevent action by the mineral lessee which would amount to intentional trespass under the lease provisions. Under the hypothetical lease provision above, the surface lessee should have an absolute right to lock the gate, just as a tenant in an apartment complex has the right to lock the door of his rented apartment to prevent entry by other tenants in the complex. Under the majority opinion, however, Ball would be denied this right and required to acquiesce in Dillard's unauthorized use. The only remedy which the majority would provide him for damage caused by the mineral lessee's trespass would be a suit for damages, which in many instances could be inadequate protection for the surface lessee.

This case would be different if the evidence established that the hill road started a significant distance from the southeast gate. In that instance it would be proper to consider the dual possession rule with regard to that part of the land lying between the gate and the beginning of the hill road, and the burden would be on the defendant Ball to establish the unreasonableness of his own conduct. *Getty Oil Co. v. Jones,* 470 S.W.2d 618, 628 (Tex.1971).

In this case, however, the evidence does not establish where the hill road begins, and there has been no jury finding on the ultimate liability issue—whether Dillard could enter through the gate without using the hill road. Thus, Dillard failed to establish Ball's liability, and the trial court was correct in rendering a take nothing judgment against both parties.

STEAKLEY, BARROW and CAMPBELL, JJ., join in this dissent.